IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC NSEUMEN, individually and on behalf of all similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 21 C 2630 |
| DAL GLOBAL SERVICES, INC., | ) ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

MATTHEW F. KENNELLY, District Judge:

Eric Nseumen sued his former employer DAL Global Services, LLC in state court, alleging violations of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/15, and asking to represent a class of similarly situated employees. DAL removed the case to federal court under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) & 1453(b). It has now moved to dismiss Nseumen's complaint under Federal Rule Civil Procedure 12(b)(6).

According to Nseumen's complaint, DAL provides "airport baggage handling operations." Compl. ¶ 14. (DAL says it was formerly a subsidiary of Delta Airlines and is now co-owned by Delta and another entity.) For about eight months in 2018, Nseumen worked for DAL as a forklift operator and baggage handler in one of its facilities at O'Hare Airport. He says that while he was working there, DAL implemented "biometric scanning and time-tracking devices and technology to monitor and manage

its workers', including Plaintiff's, time on the job." *Id.* ¶ 16. Nseumen says he was required to provide "biometric scans," apparently of his fingerprints, when clocking in and out at the start and end of his work shift. *Id.* ¶ 17. According to Nseumen, DAL disseminated information derived from its scans of his biometric identifiers to others, including vendors for timekeeping, data storage, and payroll. It failed to advise him and other similarly situated employees in writing that their biometric information was being collected, stored, used, or disseminated; it published no policy about this; and it did not seek or obtain the consent of him or other employees.

In his complaint, Nseumen asserts claims under several provisions of BIPA. These include claims for:

- failure to provide written advance notice of collection and storage of biometric information, 740 ILCS 14/15(b)(1);
- failure to inform him of the specific purpose for collection of his biometric information, *id.* § 15(b)(2);
- failure to inform him of the length of term for which his biometrics were being captured, collected, stored, and used, *id.* § 15(b)(2);
- failure to obtain a written release, *id.* § 15(b)(3);
- failure to establish a publicly available retention schedule detailing how long the biometrics are stored and/or guidelines for permanently destroying them, *id.* § 15(a);
- failure to obtain consent to disclose or disseminate the biometrics, *id.* § 15(d)(1); and
- profiting from his biometrics in violation of *id.* § 15(c).

2

DAL has moved to dismiss the complaint on various grounds. In his response, Nseumen states that he is not pursuing a claim under BIPA section 15(c), so the Court will treat any such claim as having been voluntarily dismissed without prejudice.

**1.     Airline Deregulation Act preemption**

The Court overrules DAL's contention that Nseumen's BIPA claims are preempted by the Airline Deregulation Act. Under this statute, a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b). This provision uses the same language as a parallel express preemption term in the Federal Aviation Administration Authorization Act, 29 U.S.C. § 14501(c)(1). Under the FAAAA—and thus, logically, under the ADA—preemption occurs "at least where state laws have a significant impact related to Congress' deregulatory and pre-emption-related objectives." *Rose v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008) (internal quotation marks omitted) (FAAAA case); *see Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996) (ADA preempts any state law that "relates to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them."). Conversely, there is no preemption if the state law "affect[s] carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Can's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013) (concerning the FAAAA).

The Court agrees with its colleague Judge Andrea Wood, who held that a similar BIPA claim against an airline carrier was not preempted by the ADA. *See Abudayyeh v. Envoy Air, Inc.*, No. 20 C 142, 2021 WL 3367173 (N.D. Ill. Aug. 3, 2021). BIPA does

3

not expressly refer in any way, shape, or form to airline-related services. And its impact on DAL's services or prices is, at most, remote. DAL says that that its use of biometric identifiers affects security by ensuring that only authorized individuals are involved in handling air travelers' baggage. Assuming this qualifies as a "service" for purposes of the ADA, there is no indication that BIPA's requirements have any impact on it, let alone a significant impact. *See Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2019 WL 5625180, at *3 (N.D. Ill. Oct. 31, 2019) (Kennelly, J.). DAL's comparison to cases in which privacy-based claims involving *customers'* information were dismissed is inapt, as Judge Wood concluded in *Abudayyeh*. *Abudayyeh*, 2021 WL 3367173, at *11.

**2.    Illinois Workers Compensation act preclusion**

The Court likewise overrules DAL's contention that Nseumen's BIPA claims are barred by the Illinois Workers Compensation Act, which makes workers compensation under the Act the "exclusive remedy" for "accidental injuries arising out of and in the course of the employment." 820 ILCS 305/5(a), 11. Extended analysis is unnecessary; the Court agrees on this point with its colleagues, who as best as the Court can determine have uniformly rejected similar arguments regarding BIPA claims by employees. *See, e.g., Burlinski v. Top Golf USA, Inc.*, No. 19 C 6700, 2020 WL 5253150, at *5 (N.D. Ill. Sept. 3, 2020) (Chang, J.); *Lenoir v. Little Caesar Enters., Inc.*, No. 19 C 1575, 2020 WL 4569695, at *4 (N.D. Ill. Aug. 7, 2020) (Dow, J.); *Cothron v. White Castle Sys., Inc.*, No. 19 C 382, 2020 WL 3250706, at *5 (N.D. Ill. June 16, 2020) (Tharp, J.); *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020) (Ellis, J.); *Treadwell v. Power Sols. Int'l, Inc.*, 427 F. Supp. 2d 984, 993 (N.D. Ill. 2019) (Alonso, J.).

3.   **BIPA section 15(a) claims**

DAL also argues that Nseumen's claims under BIPA section 15(a) fail to state a claim. (DAL has also moved to dismiss any claim under BIPA section 15(c), but as noted earlier Nseumen has abandoned any such claim.)

DAL's argument is that Nseumen "fails to allege that any obligation to destroy data under Section 15(a) has been triggered." Def.'s Mem. in Support of Mot. to Dismiss at 13. But Nseumen's claims do not involve failure to destroy biometric data; they involve its collection without the proper disclosures and without obtaining the required release. His allegations that DAL collected and possessed his biometric data without establishing a publicly available retention schedule for how long data will be stored and/or guidelines for its destruction are both plausible and sufficient to state a claim for violation of BIPA section 15(a).

In addition, there is nothing "unripe" about this claim, as DAL contends. In fact, DAL's ripeness argument doesn't make much sense. Section 15(a) says that an entity must establish guidelines for destroying biometric information once the purpose for obtaining it has been satisfied no more than three years after the individual's last interaction with the entity. But the fact that the policy has to say something about destroying information no more than three years out doesn't suggest that the entity may wait those three years to establish its policy. The obligation under section 15(a) is, under the statutory language, a current obligation that applies to any entity collecting biometric data—which Nseumen alleges DAL was already doing. Thus a claim regarding its failure to establish a retention and destruction policy involves a *current* violation, not a potential future violation.

5

## Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss plaintiff's complaint but, consistent with the statements in plaintiff's response to the motion, dismisses without prejudice plaintiff's claim under 740 ILCS 14/15(c). Defendant is directed to answer all remaining claims by no later than November 2, 2021. Each side's Rule 26(a)(1) disclosures are due on that same date. The parties are directed to confer regarding a discovery and pretrial schedule and are to file a joint status report with a proposal, or separate proposals if they cannot agree, by November 9, 2021. The telephonic status hearing set for October 12, 2021 is vacated and reset to November 16, 2021 at 9:10 a.m., using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

Date: October 11, 2021

_____
MATTHEW F. KENNELLY
United States District Judge